UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FORD GLOBAL TECHNOLOGIES, LLC, §<br>Plaintiff, §<br>§<br>v. §<br>§<br>NEW WORLD INTERNATIONAL, INC., §<br>AUTO LIGHTHOUSE PLUS, LLC and §<br>UNITED COMMERCE CENTERS, INC., §<br>Defendants. § | Case No.: 3:17-cv-03201-N |

**APPENDIX IN SUPPORT OF DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR ADDITIONAL ATTORNEY FEES**

| Appx | Description |
|---|---|
| | |
| 1 | LKQ Corporation v. GM Global Technology Operations LLC, IPR2020-00062 |
| 27 | Hyundai Motor America, Inc. v. Depo Auto Parts Industrial Co., Ltd,, Case No. 8:18-cv-02151; Memorandum of Points and Authorities in Support of Defendants' Partial Motion to Dismiss Plaintiffs' Claims for Patent Infringement |
| 44 | United States Patent D878,261 |

Dated: October 9, 2020.

Respectfully submitted,

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
OAKE LAW OFFICE, PLLC
700 S. Central Expy., Suite 400
Allen, TX 75013
(214) 207-9066
Email:  rgo@oake.com

Robert Maris
3710 Rawlins Street, Suite 1550
Dallas, TX 75219
(214) 706-0920
Email: RMaris@gpm-law.com

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

On October 9, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Attorney for Defendants

Trials@uspto.gov
571-272-7822

Paper 14
Date: April 16, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

LKQ CORPORATION AND
KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,
Petitioner,

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,
Patent Owner.

————————

IPR2020-00062
Patent D811,964 S

————————

Before KEN B. BARRETT, SCOTT A. DANIELS, and
ROBERT L. KINDER, *Administrative Patent Judges.*

KINDER, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
35 U.S.C. § 314

IPR2020-00062
Patent D811,964 S

# I.    INTRODUCTION

LKQ Corporation and Keystone Automotive Industries, Inc. (collectively, "Petitioner") filed a Petition to institute an *inter partes* review of the claim for a vehicle front upper bumper in U.S. Patent No. D811,964 S ("the '964 patent").  Paper 2 ("Pet.").  GM Global Technology Operations LLC ("Patent Owner") filed a Preliminary Response to the Petition.  Paper 8 ("Prelim. Resp.").

Pursuant to our authorization (Paper 10), Petitioner filed a Preliminary Reply (Paper 11) addressing whether Petitioner improperly relied on a vehicle design that itself was not a patent or printed publication.

We have authority to determine whether to institute an *inter partes* review under 35 U.S.C. § 314 and 37 C.F.R. § 42.4(a).  Applying the standard set forth in 35 U.S.C. § 314(a), which requires demonstration of a reasonable likelihood that Petitioner would prevail with respect to the challenged claim, we do not institute an *inter partes* review of the challenged claim based on the grounds identified in the Order section of this Decision.

## A.    *Related Proceedings*

Petitioner filed petitions challenging the patentability of other design patents owned by Patent Owner, but none involving the '964 patent.  Pet. 3–4.  Patent Owner also identifies the same proceedings but does not concede they are related.  Paper 4.

## B.    *The '964 Patent and Claim*

In an *inter partes* review, "a claim of a patent . . . shall be construed using the same claim construction standard that would be used to construe

2

IPR2020-00062
Patent D811,964 S

the claim in a civil action under 35 U.S.C. 282(b)."  37 C.F.R. § 42.100(b)
(2019).

     With respect to design patents, it is well-settled that a design is
represented better by an illustration than a description.  *Egyptian Goddess,
Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (citing
*Dobson v. Dornan*, 118 U.S. 10, 14 (1886)).  Although preferably a design
patent claim is not construed by providing a detailed verbal description, it
may be "helpful to point out . . . various features of the claimed design as
they relate to the . . . prior art." *Egyptian Goddess*, 543 F.3d at 679–80; *cf.*
*High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1314–15
(Fed. Cir. 2013) (remanding to district court, in part, for a "verbal
description of the claimed design to evoke a visual image consonant with
that design").

     Based on the positions of the parties, and considering the relationship
of the prior art to the claimed design, we find it helpful to describe verbally
certain features of the claim for purposes of this Decision.  *See Egyptian
Goddess*, 543 F.3d at 680.  We find Patent Owner's description of the
claimed design discussed below to be the most accurate in portraying the
ornamental impression of the claimed vehicle front bumper.

     The '964 patent (Ex. 1001) issued March 6, 2018.  *Id.* at code (10),
(45).  The '964 patent is titled "Vehicle Front Upper Bumper," and the claim
recites "[t]he ornamental design for a vehicle front bumper, as shown and
described."  *Id.* at code (54), (57).  The claim for the vehicle front upper
bumper is represented in four claimed figures.  Figures 1–3 are depicted and
discussed below.

IPR2020-00062
Patent D811,964 S



**FIG. 1**

Figure 1 of the '964 patent is a perspective view of a front bumper.  *Id.*
The '964 patent depicts a vehicle front upper bumper with complex surfaces
and sloping top perimeter lines.  Prominent depressions and openings on the
left and right portions of the bumper highlight the design.

As depicted, most elements in the design are drawn in solid lines, but
some portion of the design is illustrated by broken lines.  The Description of
the invention explains:

> In the drawings, the portions shown by broken lines form no part
> of the claimed design.

*Id.* at Description.  *See* 37 C.F.R. § 1.152; *see also* MPEP § 1503.02,
Subsection III, 9th ed. rev. 08.2017 Aug. 2017 ("Unclaimed subject matter
may be shown in broken lines for the purpose of illustrating the environment
in which the article embodying the design is used.  Unclaimed subject matter
must be described as forming no part of the claimed design or of a specified
embodiment thereof.").

4

IPR2020-00062
Patent D811,964 S

Petitioner offers a very simplified interpretation of the design claim. Petitioner states that "the design is for a vehicle bumper comprising two parts, an elongated upper section that is primarily flat, and a lower section that appears designed to encircle and hold the vehicle's grille, lights, vents, and other elements of the front end of the vehicle." Pet. 11. Referring to annotated Figure 2 of the design (below), Petitioner compresses the intricacies of the right and left section into a generic "bell-like" section, alleging that the invention comprises "a bell-like bulging section on a right side and a left side of the bumper," and "an inward-facing polygonal-shaped, recessed opening in each bell-like bulging section." *Id.*



Petitioner's annotated Figure 2 of the '646 patent showing highlighted sections of the design on the right and left sides. Pet. 11.

Patent Owner argues that Petitioner's description of the claimed design in the present Petition ignores features of the claimed design and largely relies on "an overly-general approach" used to draw incomplete and misleading comparisons with the asserted prior art. Prelim. Resp. 1 (the petition "fails to address the design's claimed features"). Patent Owner contends:

The design includes complex surfaces and sloping top perimeter lines that direct a viewer's focus centrally and evoke an athletic and agile posture. The depressions and openings on left and right portions of the bumper contribute to this appearance, as does the sloped surfaces and lines of the bumper profile when viewed from the side (as shown in FIG. 3, for example).

LKQ ignores these specific features that contribute to the overall appearance of the '964 Patent. For example, LKQ's description fails to accurately convey the perimeter shape and surface contours of the left and right sections of the bumper reflected in the patent. LKQ describes these portions generically as "bell-like bulging sections," but that ignores the nuances of the claimed design, which includes edges and complex surfaces tending to direct a viewer's focus centrally and evoke an athletic and agile posture. As shown below, GM's design—beneath LKQ's yellow bell-shaped annotation—includes top and bottom perimeter edges (A) angled slightly downwards centrally to different degrees, tapering sections (B) that taper to different extents such that the "elongate horizontal portion is located slightly offset towards lower portions of the left and right bumper sections, and outer perimeter surfaces (C) angled in opposite directions, and to differing degrees, relative to vertical.

Prelim. Resp. 15–16.



Patent Owner's annotated Figure 2 with letters A, B, and C added to lines along the figure. Prelim. Resp. 16.

6

Patent Owner contends that Petitioner's "generic characterization of these features as 'bell-like bulging sections' ignores these features and mischaracterizes the invention." *Id.* at 16–17. Petitioner also contends that Patent Owner has ignored the significance of "the depressions (shaded below in red) that lead from recessed openings in each of the left and right bumper sections."



**FIG. 2**

Patent Owner's Figure 2 with depressions shaded in red. *Id.* Patent Owner explains that "[t]hese depressions have a relatively extended length compared to the opening, extending centrally and forwardly a distance commensurate with the entire length of the recessed openings," and further that Petitioner's "generic characterization as 'inward-facing polygonal-shaped' openings additionally fails to acknowledge the relative orientations of the opening/depression, the angles of the top and bottom edges, or the vertical positioning relative to the purported 'elongated horizontal bar.'" *Id.*

Figure 3 of the '964 patent, below, depicts the leading portion of the bumper that extends outwardly at a noticeable downward angle from the remainder of the bumper.

IPR2020-00062
Patent D811,964 S



## FIG. 3

Figure 3 of the '964 patent showing a side elevational view. Also observable from the side view is a depression having a relatively extended length compared to the opening. The depression area extends forwardly a distance slightly more than the width of the recessed opening shown in this view. The leading portion of the bumper protrudes from the rest of the bumper forwardly with a boxy lip shape that angles downward. Petitioner does not specifically address this view of the claim, nor does Petitioner compare this view or the top plan view of Figure 4 to the prior art. *See* Pet. 7–8 (showing Figures 3 and 4 but with no discussion).

Overall, we determine that a verbal description of the design is helpful in assessing the relevant ornamental features of the vehicle front bumper discussed above, including the complex surfaces and sloping top perimeter lines that direct a viewer's focus centrally. An elongate horizontal portion that is narrow with top angled lines sloping slightly downward extends toward the middle. This central elongate horizontal portion also extends for about half the distance of the bumper. This central elongate horizontal

8

IPR2020-00062
Patent D811,964 S

portion expands into an outward area of each side with complex lines of curvature and a sloping indentation area.

The outward area has perimeter edges angled slightly downwards centrally to different degrees, tapering sections that taper to different extents such that the elongate horizontal portion is located slightly offset towards lower portions of the left and right bumper sections, and outer perimeter surfaces angled in opposite directions, and to differing degrees, relative to vertical.  Depressions lead from the recessed openings in each of the left and right bumper sections.  These depressions have a relatively extended length compared to the opening, extending centrally and forwardly a distance commensurate with the entire length of the recessed openings.  The side view of Figure 3 of the claim depicts a leading portion of the bumper, a boxy lip shape, which extends outwardly at a noticeable downward angle from the remainder of the bumper.

<em>C.     References and Other Evidence</em>

The Petition relies on the following alleged prior art references:

1.  A web page print out from "NetCarShow.com" depicting the 2015 Ford Edge purportedly retrieved from the "web.archive.org" with an archive date in 2015 (Ex. 1006).

2.  A web page print out from "media.ford.com" depicting the 2015 Ford Edge purportedly retrieved from the "web.archive.org" with an archive date in 2014 (Ex. 1007).

3.  2015 Ford Edge brochure, a web page print out from "motorologist.com" purportedly retrieved from the "web.archive.org" with an archive date in 2015 (Ex. 1008).

9

IPR2020-00062
Patent D811,964 S

4.  A web page print out from "thetruthaboutcars.com" depicting the 2016 Chevrolet Equinox purportedly retrieved from the "web.archive.org" with an archive date in 2015 (Ex. 1010).

5.  U.S. Patent No. D721,305 S, issued Jan. 20, 2015 (Ex. 1009, "George").

Petitioner supports its challenge with a declaration by James Gandy (Ex. 1003, "the Gandy Declaration") and a declaration by Jason C. Hill (Ex. 1004, "the Hill Declaration").

D.  *The Alleged Grounds of Unpatentability*

Petitioner contends that the sole design claim is unpatentable on the following grounds (Pet. 6).[1]

| Reference(s)/Basis | 35 U.S.C. § |
|---|---|
| "A depiction of the 2015 Ford Edge (Exs. 1006–1008)" | 102 |
| "A depiction of the 2015 Ford Edge (Exs. 1006–1008)" | 103 |
| "[T]he 2015 Ford Edge in view of Patent Owner's 2016 Chevrolet Equinox (Ex. 1010)" | 103 |
| "U.S. Patent No. D721,305 ('George') (Ex.1009)" | 102 |
| "U.S. Patent No. D721,305 ('George') (Ex.1009)" | 103 |
| "George (Ex.1009) in view of the 2016 Chevrolet Equinox (Ex.1010)" | 103 |

Pet. 13–14.

---

[1]  We list the grounds as Petitioner has set forth in its challenges.  Pet. 13–14.

## II.    ANALYSIS

### A.    Principles of Law

#### 1.    Anticipation

The "ordinary observer" test for anticipation of a design patent is the same as that used for infringement, except that for anticipation, the patented design is compared with the alleged anticipatory reference rather than an accused design. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1238, 1240 (Fed. Cir. 2009). The ordinary observer test for design patent infringement was first enunciated by the Supreme Court in *Gorham Co. v. White*, 81 U.S. 511 (1871), as follows:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528. The ordinary observer test requires the fact finder to consider all of the ornamental features illustrated in the figures that are visible at any time in the "normal use" lifetime of the accused product, i.e., "from the completion of manufacture or assembly until the ultimate destruction, loss, or disappearance of the article." *Int'l Seaway*, 589 F.3d at 1241. Further, while the ordinary observer test requires consideration of the overall prior art and claimed designs,

> [t]he mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another. Just as "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement" . . . so too minor differences cannot prevent a finding of anticipation.

Appx 011

IPR2020-00062
Patent D811,964 S

*Id.* at 1243 (citation omitted) (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

2.   Obviousness

In a challenge to a design patent based on obviousness under 35 U.S.C. § 103, the ultimate inquiry is "whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)).  This obviousness inquiry consists of two steps. *Apple*, 678 F.3d at 1329.  In the first step, a primary reference (sometimes referred to as a "*Rosen* reference") must be found, "the design characteristics of which are basically the same as the claimed design."  *Id.* (quoting *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982)).  This first step is itself a two-part inquiry under which "a court must both '(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates "basically the same" visual impression.'"  *High Point Design*, 730 F.3d at 1311–12 (quoting *Durling*, 101 F.3d at 103).

In the second step, the primary reference may be modified by secondary references "to create a design that has the same overall visual appearance as the claimed design."  *Id.* at 1311.  However, the "secondary references may only be used to modify the primary reference if they are 'so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"  *Durling*, 101 F.3d at 103 (quoting *In re Borden*, 90 F.3d 1570, 1575 (Fed. Cir. 1996)) (alteration in the original).

12

IPR2020-00062
Patent D811,964 S

### B.    *The Ordinary Observer*

The parties offer varied definitions for the ordinary observer.

Petitioner contends "the ordinary observer would be the retail consumer of vehicle front bumpers." Pet. 31 (citing Ex. 1003 ¶ 35; Ex. 1004 ¶ 26). Neither Petitioner, nor its declarants, further elaborate as to who may qualify as a retail consumer of front bumpers.

Patent Owner argues that "the ordinary observer includes commercial buyers who purchase a replacement bumper to repair a customer's vehicle, such as repair shop professionals." Prelim. Resp. 6. Patent Owner notes that Petitioner has admitted in a related proceeding (IPR2020-00065) that "customers for aftermarket automotive parts primarily consist of professional auto body and mechanical repair shops who are knowledgeable about the automotive industry." *Id.* at 6–7 (quoting IPR2020-00065, Paper 2, 21) (emphasis omitted). Patent Owner points out that "[b]ecause a repair shop buyer reviews and analyzes various products as part of his or her job duties, that buyer is particularly discerning." *Id.* at 7; Ex. 2001, 4 ("LKQ's customers for aftermarket automotive parts primarily consist of professional auto body and mechanical repair shops who are knowledgeable about the automotive industry.").

Patent Owner has presented credible argument and evidence as to why the ordinary observer would be a repair shop professional. Our analysis, however, reaches the same result using either parties' definition of the ordinary observer. That is say, the evidence on the record before us demonstrates that the asserted prior art designs have such distinct characteristics that either ordinary observer (the retail consumer or the repair shop professional) would not confuse the prior art designs for the design

13

IPR2020-00062
Patent D811,964 S

claimed by the '964 patent.  Accordingly, for purposes of our analysis in this proceeding, we adopt Petitioner's understanding of the ordinary observer as the retail consumer of vehicle front bumpers.  This ordinary observer would be more discerning than an average person because a vehicle front bumper is an expensive purchase usually made to return a damaged vehicle to original form.  Ex. 2001, 10, 13, 14 (Petitioner conveying the importance of automobile repair parts looking the same and noting that purchases are made by informed customers.).

### C.    *The Designer of Ordinary Skill*

Petitioner's contends that "a designer of ordinary skill would be an individual who has at least an undergraduate degree in transportation or automotive design and work experience in the field of transportation design, or someone who has several years' work experience in the field of transportation or automotive design."  Pet. 29.

Patent Owner responds that "[a] designer of ordinary skill in the art . . . would have at least an undergraduate degree in automotive design, or other related industrial design field, with at least two years of relevant practical experience in designing automotive body parts."  Prelim. Resp. 8.

Petitioner's formulation of the designer of ordinary skill in the art is somewhat vague because of the use of terms such as "at least" and "several years' work" without further elaboration.  Apart from the use of these vague terms, we find no discernible difference in the parties' formulation of the designer of ordinary skill in the art.  For purposes of this Decision, we proceed with the understanding that the designer of ordinary skill is an individual with an undergraduate degree in transportation, automotive, or

14

Appx 014

IPR2020-00062
Patent D811,964 S

industrial design, and with at least two years of relevant practical experience
in the field of transportation or automotive design.

### D.    Grounds of Petition Not Based on Patent or Printed Publications

Patent Owner contends that "[g]rounds 1-3 fail because they are based
on a physical vehicle—the '2015 Ford Edge'—not 'patents or printed
publications.'"  Prelim. Resp. 8–10.  Patent Owner also notes that Exhibits
1006–1008 are all distinct documents with unclear publication dates and
therefore do not quality as "printed publications."  *Id.* at 10–11.

Patent Owner's concerns are well-grounded because the Petition
alleges that the claim of the '964 patent is "anticipated by a depiction of the
2015 Ford Edge."  Pet. 13.  Petitioner thereafter cites three Internet web
page print outs that show the depiction of the 2015 Ford Edge.  The Petition
never specifically states that it is relying on any one of these print outs as the
sole printed publication – anticipation requires a single reference.  In fact,
the Petition cites Exhibit 1007 in an attempt to show the design of the 2015
Ford Edge was made publicly available as of June 28, 2014, but then relies
on other images of other exhibits (having different purported publication
dates) in its discussion of the design of the 2015 Ford Edge.  Pet. 31.

In its Petition for Grounds 1–3, Petitioner offers a confusing analysis
seemingly relying on the design of an actual vehicle and not a printed
publication as the basis for its analysis.  Likewise, Petitioner's declarants
offer no clarification and further confuse the analysis by again relying on the
2015 Ford Edge and not a printed publication as the basis for
unpatentability.  *See* Ex. 1003 ¶¶ 44, 47 ("The 2015 Ford Edge Anticipates
the Claim of the '964 Patent"); Ex. 1004 ¶ 51 ("The 2015 Ford Edge
Anticipates the Claim of the '964 Patent.").

IPR2020-00062
Patent D811,964 S

Petitioner attempts to clarify the record in its Preliminary Reply asserting "Petitioner bases its first two grounds on Ex. 1008, the 2015 Ford Edge brochure, alone."  Paper 11, 2.  Petitioner points out that Exhibit 1008 is frequently cited in the Petition and compared to the claim of the '964 patent.  Petitioner also cites to *Hulu, LLC v. Sound View Innovations, LLC*, Case No. IPR2018-01039, Paper 29 (PTAB Dec. 20, 2019), and contends that Petitioner "has additional evidence—the Internet Archive Affidavit— that establishes the public accessibility of [Exhibit] 1008."  *Id.* at 3, n.2.

For purposes of our analysis, we will treat Exhibit 1008 as the primary reference asserted by Petitioner for Grounds 1–3.  We also presume, for purposes of our analysis, that Exhibit 1008 was a printed publication published before the priority date of the '964 patent.

### E.    *Anticipation Based on 2015 Ford Edge (Exs. 1008 and 1009)*

We examine Petitioner's two anticipation grounds, one based on Exhibit 1008 and one based on Exhibit 1009, concurrently.  While Exhibit 1008 is a webpage depicting the 2015 Ford Edge, Exhibit 1009 is an issued design patent ("George") that also depicts, or covers, the 2015 Ford Edge. *See* Pet. 2; Prelim. Resp. 39; Ex. 1003 ¶ 45 ("I understand that its 'embodiment' is the 2015 Ford Edge.").  Below, we place page 7 of Exhibit 1008 alongside Figure 3 of George to show the similarity of the two designs.



16

IPR2020-00062
Patent D811,964 S

Exhibit 1008 (left) and Exhibit 1009 (right) both showing a front view of the
bumper of the 2015 Ford Edge.

Although Petitioner conducts a separate anticipation analysis based on each reference (Pet. 31–37, 44–48), the faults we examine below are equally applicable to both grounds, so we combine our analysis for efficiency.

Petitioner contends that the '964 patent claim is anticipated by the 2015 Ford Edge (Ex. 1008 and George). *Id.* Petitioner argues that to the ordinary observer, the design disclosed by the 2015 Ford Edge is substantially the same as that claimed in the '964 patent, such that the resemblance would deceive such an observer, inducing him to purchase one supposing it to be the other. Pet. 31–37, 44–48.

Petitioner draws a highlighted bell section around the ends of each design as depicted below.



Petitioner's annotated Figure 2 of the '964 patent compared to Exhibit 1008
(2015 Ford Edge) with added highlighting. Pet. 33–34.

Petitioner then alleges that

> the '964 Patent and the 2015 Ford Edge share the following design elements: 1) a bell-like bulging section on a left side and a right side of the bumper . . . 2) an inward-facing, polygonal-shaped, recessed opening in each bell-like bulging section . . . 3) an elongated horizontal bar extending across the bumper connecting the left and the right bell-like, bulging sections.

17

IPR2020-00062
Patent D811,964 S

*Id.* at 34–36.

Patent Owner contends that Petitioner fails to demonstrate that the 2015 Ford Edge anticipates the claimed design.  Prelim. Resp. 20, 39. Patent Owner first alleges that Petitioner's "description of the claimed design is insufficient because it focuses on design 'concepts' generic to many vehicle bumpers, rather than addressing the features of the claimed design."  *Id.* at 14.  Patent Owner argues that Petitioner's

> description fails to accurately convey the perimeter shape and surface contours of the left and right sections of the bumper reflected in the patent.  LKQ describes these portions generically as 'bell-like bulging sections,' but that ignores the nuances of the claimed design, which includes edges and complex surfaces tending to direct a viewer's focus centrally and evoke an athletic and agile posture.

*Id.* at 15–16.  As detailed below, we agree with Patent Owner's assessment.

By categorizing the most intricate and complex features of the design in generic terms, for example as a "bell-like bulging section," Petitioner has avoided detailing the unique features of the design.  *See* Pet. 11.  Petitioner's declarants also adopt these generic descriptions verbatim, and, as such, we do not find their testimony useful.  *See* Ex. 1003 ¶¶ 33, 50, 72; Ex. 1004 ¶¶ 31, 54, 75.  Petitioner's focus on general design concepts, like a bell-shape, leads to a generic description of a vehicle bumper, rather than presenting an accurate visual image of the claimed design.  Petitioner has also avoided discussing the differences between the claimed design and the 2015 Ford Edge (Ex. 1008 and George) by doing the same.

For example, Petitioner fails to address the extended depressions positioned inwardly of the "polygonal-shaped, recessed opening," the actual appearance of the "polygonal-shaped, recessed opening," and the

IPR2020-00062
Patent D811,964 S

contributions of these features to the overall appearance of the claimed design.  *See* Pet. 11–13.  As depicted below, the claimed design includes a depression that is substantially elongated and larger compared to the "polygonal-shaped" opening.  As also seen below, the "opening" itself has a distinctive shape provided by the angles and dimensions of the edges that define the "opening."  These features are shown in solid lines, and contribute to the overall appearance of the claimed design.



Patent Owner's annotated Figure 2 of the '954 patent (top) as compared to

19

IPR2020-00062
Patent D811,964 S

> Petitioner's annotated image from Exhibit 1008 (middle) and annotated
> Figure 3 of George (bottom).  Pet. 36, 47; Prelim. Resp. 23.

As depicted in Figure 2 of the '964 patent, seen above, the depressions of the claimed design have a relatively extended length compared to the opening, and extend inwardly and forwardly a distance commensurate with the entire length of the recessed openings.  Comparatively, this claimed design is in stark contrast to the relative shape and dimensions of the depression of the 2015 Ford Edge, which has a length that is only a fraction of the length of the entire opening, and a shape that is different from the shape of the claimed design.  *See* Prelim. Resp. 23–24.  As also depicted above, the openings of the '964 patent have smooth, rounded corners; the top edges are angled downwardly from right to left, while the bottom edge is angled upwardly from right to left; and the inner and outer side edges of the opening have a similar angle relative to a vertical direction.  *Id.*  Further, the claimed design has a tapering/varied height of the elongated center horizontal bar that is not found in the 2015 Ford Edge.  *Id.* at 28–30.

In the 2015 Ford Edge, as depicted below, the opening is defined by sharp corners, particularly the arrow-shaped inward side of the opening.  *Id.* at 24.  Both the top and bottom edges of the opening are angled downwardly from right to left, and inner and outer sides having significantly different angles relative to a vertical direction.  *Id.*  Petitioner has failed to address these claimed design characteristics.

20

IPR2020-00062
Patent D811,964 S



Petitioner's annotated Figure 1 of the '964 patent (left) compared to
Petitioner's annotated figure from Exhibit 1008 (right) both showing a
yellow highlight over the opening.  Prelim. Resp. 24.

Petitioner's analysis and comparison of the designs is particularly
deficient when it comes to the side view.  Petitioner ignores the features
shown in the invention's side view—Petitioner does not compare the side
view shown in Figure 3 to the 2015 Ford Edge at all.  *See* Pet. 31–37.
Comparison of Figure 3 with the 2015 Ford Edge, as shown below, confirms
additional differences not addressed by Petitioner.  *See* Prelim. Resp. 25–26.





Petitioner's annotated Figure 3 of the '964 patent (left) compared to Exhibit
1008 (middle) and Figure 5 of George (right).

As shown above in Figure 3, the claimed design includes an outwardly-
protruding leading portion, angled noticeably downward.  The 2015 Ford
Edge does not have such a significant protruding leading portion with a
noticeable downward angle.  Petitioner also fails to analyze the actual
appearance and specific design characteristics of the extended depressions
positioned inwardly (to the left in the view of Figure 3 above) of the

21

IPR2020-00062
Patent D811,964 S

"polygonal-shaped, recessed opening," or of the "openings" themselves.  *See* Prelim. Resp. 26.  As seen above, the relative dimensions of the depression compared to the openings differ dramatically between the '964 patent and the 2015 Ford Edge (Exhibit 1008 and George), as plainly visible from the side view comparison above.  Again, Petitioner fails to address, or even acknowledge, these significant differences in design characteristics and appearance.  Petitioner also fails to compare the top plan view of Figure 4 of the '964 patent to the prior art designs.

Based on the distinct differences between the designs discussed above and the overall lack of similarity in the overall designs, we are not persuaded an ordinary observer would recognize the designs as substantially the same. Further, we do not believe that the ordinary observer would be deceived to purchase one supposing it to be the other.  Accordingly, we determine that Petitioner has failed to establish a reasonable likelihood that the claim of the '964 patent is anticipated based on Exhibit 1008.  Likewise, we determine that Petitioner has failed to establish a reasonable likelihood that the claim of the '964 patent is anticipated based on George (Exhibit 1009).

> F.    *Obviousness Grounds Based on the 2015 Ford Edge*

Petitioner contends the ornamental design for the '964 patent would have been obvious to a designer of ordinary skill based on four grounds – two based on "the 2015 Ford Edge" (Exhibit 1008) and two based on George (Exhibit 1009).  Pet. 13–14.  Because, for the reasons discussed below, we disagree that the 2015 Ford Edge and George have basically the same design as the claimed design, and because Petitioner fails to create a design that has the same overall visual appearance as the claimed design, we determine that Petitioner has not demonstrated a reasonable likelihood that the claim of the

Appx 022

IPR2020-00062
Patent D811,964 S

'964 patent would have been unpatentable over either reference, alone, or in combination with Exhibit 1010.

Petitioner contends "[t]here is one minor difference between the 2015 Ford Edge and the claimed design."  Pet. 38.  Specifically, "[t]he horizontal middle bar of the 2015 Ford Edge has no center bevel whereas the '964 Patent has such a bevel."  *Id.*  Petitioner then asserts two obviousness theories, either "the addition of a center bevel is a *de minimis* difference to the overall visual appearance of the design and is an 'insubstantial change that would have been obvious to a skilled designer,'" or in the alternative, "the single claim of the '964 Patent is unpatentable as obvious over the 2015 Ford Edge in view of Patent Owner's 2016 Chevrolet Equinox (Ex. 1010)."  *Id.* at 38–40.

As for just the center bevel, we agree with Petitioner that this feature is fairly minor to the overall design.  However, the substantial differences in the designs discussed above are again ignored by Petitioner.  Petitioner's obviousness theories are based on the flawed premise that there is only one minor difference between the 2015 Ford Edge (Exhibit 1008 and George) and the claimed design.  By failing to recognize the actual differences in the designs and offer some theory as to how the primary reference could be modified to ornamentally show those differences, Petitioner's obviousness grounds fair no better than the anticipation grounds.

As discussed previously regarding anticipation, there are actually multiple readily apparent differences between the claimed design and the 2015 Ford Edge, but Petitioner never acknowledges these differences, much less properly analyzes these features of the claimed design in comparison to the 2015 Ford Edge.  We agree with Patent Owner that "the actual

23

IPR2020-00062
Patent D811,964 S

appearance of every single element in Petitioners' characterization of the claimed design—the 'bell-like bulging section,' the 'polygonal-shaped, recessed opening,' and the 'elongated horizontal bar'—would have needed to be modified in order to recreate the claimed design.'"  Prelim. Resp. 32. Thus, even if Petitioner's primary *Rosen* references (Exhibit 1008 and George) were altered to incorporate a "center bevel," Petitioner still has not persuasively established why the result would create a design that has the same overall visual appearance as the claimed design.  As examined above, the resulting ornamental design would still lack readily apparent features of the claimed design, including a substantially elongated and larger depression relative to the opening, the shape of the opening, the tapering/varied height of the central elongated horizontal bar, including its angled top edges, and the unique protruding profile of the front portion, particularly as viewed from the side.

Accordingly, we determine that Petitioner has failed to establish a reasonable likelihood that the claim of the '964 patent would have been obvious based on: (1) Exhibit 1008 alone, (2) Exhibit 1008 in view of Exhibit 1010, (3) George alone, and (4) George in view of Exhibit 1010.

## III.   CONCLUSION

We conclude that Petitioner has failed to demonstrate a reasonable likelihood of prevailing with respect to its challenge to the patentability of the '964 patent claim.

## IV.   ORDER

For the foregoing reasons, it is

24

IPR2020-00062
Patent D811,964 S

ORDERED that the Petition is *denied* as to the challenged claim of the '964 patent, and no trial is instituted.

IPR2020-00062
Patent D811,964 S


For PETITIONER:


Barry F. Irwin, P.C.
Reid P. Huefner
Irwin IP LLC
birwin@irwinip.com
rhuefner@irwinip.com

For PATENT OWNER:

Dorothy P. Whelan
Craig A. Deutsch
Grace J. Kim
Jennifer J. Huang
Joseph A. Herriges
Fish & Richardson P.C.
PTABInbound@fr.com
whelan@fr.com
deutsch@fr.com
gkim@fr.com
jhuang@fr.com
herriges@fr.com

1   LTL ATTORNEYS LLP
2   Enoch Liang (SBN 212324)
    enoch.liang@ltlattorneys.com
3   Michael Song (SBN 243675)
4   michael.song@ltlattorneys.com
    Vincent M. Pollmeier (SBN 210684)
5   vincent.pollmeier@ltlattorneys.com
6   300 S. Grand Ave., 14th Floor
    Los Angeles, CA 90071
7   Tel: 213-612-8900
8   Fax: 213-612-3773

9   Attorneys for Defendants
    DEPO AUTO PARTS INDUSTRIAL CO., LTD.
10  and MAXZONE VEHICLE LIGHTING CORP.

11

12                  UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14                      SOUTHERN DIVISION

15

16  HYUNDAI MOTOR AMERICA, INC.,          Case No. 8:18-cv-02151-JVS-KES
    a California corporation, HYUNDAI
17  MOTOR COMPANY, a Korean              **MEMORANDUM OF POINTS
    corporation,                          AND AUTHORITIES IN
18                                        SUPPORT OF DEFENDANTS'
                                          PARTIAL MOTION TO DISMISS
19              Plaintiffs,               PLAINTIFFS' CLAIMS FOR
                                          PATENT INFRINGEMENT**
20     v.
21                                        Date:   Monday, September 9, 2019
    DEPO AUTO PARTS INDUSTRIAL            Time:   1:30 p.m.
22  CO., LTD., a Taiwanese corporation, and  Place:  Ctrm. 10C
    MAXZONE VEHICLE LIGHTING             Judge:  Hon. James V. Selna
23  CORP., a California corporation,
24
25              Defendants.
26
27
28

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION .................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................... 1

       A.    Asserted Patents ......................................................................... 1

       B.    Accused Products ........................................................................ 3

III.   LEGAL STANDARD ............................................................................. 4

IV.    THE COURT SHOULD DISMISS HYUNDAI'S CLAIMS FOR
       PATENT INFRINGEMENT AGAINST HEADLAMPS NOT
       DEPICTED IN THE ASSERTED PATENTS ........................................ 5

       A.    The Asserted Patents Are Limited to the Headlamp on One Side
             (Either the Driver-Side or Passenger-Side) of an Automobile ............... 5

       B.    No Reasonable Factfinder Would Find That a Headlamp on One
             Side of an Automobile Is Substantially Similar to the Headlamp
             on the Opposite Side of the Automobile .................................................. 8

V.     CONCLUSION ..................................................................................... 12

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3

4

*Anderson v. Kimberly-Clark Corp.*,
   570 Fed. Appx. 927 (Fed. Cir. 2014)...................................................9

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................5

7

8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................4, 5

9

10

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002) ..........................................................8

11

12

*Colida v. Nokia, Inc.*,
   347 Fed. Appx. 569 (Fed. Cir. 2009)...................................................9

13

14

*Dorman Products, Inc. v. Paccar, Inc.*,
   201 F. Supp. 3d 663 (E.D. Penn. 2016)............................................7, 8

15

16

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ....................................................5, 6, 8

17

18

*Elmer v. ICC Fabricating, Inc.*,
   67 F.3d 1571 (Fed. Cir. 1995) ............................................................5

19

20

*Enerlites, Inc. v. Century Prods. Inc.*,
   2018 WL 4859947 (C.D. Cal. Aug. 13, 2018) ....................................8

21

22

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*,
   162 F.3d 1113 (Fed. Cir. 1998) ..........................................................6

23

24

*Gorham Co. v. White*,
   81 U.S. 511 (1872)..............................................................................8

25

26

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ............................................................5

27

28

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)................................................................6

*MSA Prods., Inc. v. Nifty Home Prods., Inc.*,
    883 F. Supp. 2d 535 (D. N.J. 2012).........................................9

*Nuvasive, Inc. v. Alphatec Holdings, Inc.*,
    2018 WL 2734881 (S.D. Cal. May 14, 2018) ..........................9

*Oakley, Inc. v. Trillion Top Co. Ltd. LLC*,
    2018 WL 5099484 (C.D. Cal. June 4, 2018) ...........................6

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ...............................................6

*Performance Designed Products LLC v. Mad Catz, Inc.*,
    2016 WL 3552063 (S.D. Cal. June 29, 2016) ..........................9

*SCD Characters LLC v. Telebrands Corp.*,
    2015 WL 4624200 (C.D. Cal. Aug. 3, 2015) ...........................9

**Statutes**

35 U.S.C. § 289.................................................................................8

37 C.F.R. § 1.152..............................................................................7

**Rules**

Federal Rule of Civil Procedure 8(a)(2) .........................................4

Federal Rule of Civil Procedure 12 (b)(6)...........................1, 4, 5, 9

M.P.E.P. at § 1503 ...........................................................................6

M.P.E.P. at § 1504.01(b) .................................................................7

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12 (b)(6), Defendants Depo Auto Parts Industrial Co., Ltd. and Maxzone Vehicle Lighting Corp. (collectively, "Defendants") move the Court for an Order dismissing Plaintiffs Hyundai Motor America, Inc. and Hyundai Motor Company's (collectively, "Hyundai" or "Plaintiffs") claims for infringement against headlamps not depicted or claimed in the asserted design patents for failure to state a claim upon which relief can be granted.

In their First Amended Complaint, Plaintiffs allege that Defendants infringe twenty-one U.S. design patents, each claiming "[t]he ornamental design for a [headlamp / head lamp] for an automobile, as shown and described." Each asserted patent shows only a headlamp for one side of an automobile (*e.g.*, either the driver-side or the passenger-side) and none of the asserted patents include any language describing the mirror image of the depicted headlamp as a claimed embodiment. Thus, as a matter of law, the asserted patents only cover the headlamp for one side of an automobile—either the driver-side or the passenger-side.

Plaintiffs, however, allege that both driver-side and passenger-side headlamps infringe each of the asserted patents.  But a driver-side headlamp is sufficiently distinct from a passenger-side headlamp (and vice versa) that an ordinary observer would never be deceived into purchasing one supposing it be the other.  Thus, the First Amended Complaint fails to allege a plausible claim that the headlamp on the opposite side of the one depicted in each asserted patent infringes the asserted patents.

For these reasons, the Court should grant Defendants' partial motion to dismiss.

## II.     FACTUAL BACKGROUND

### A.     Asserted Patents

In their First Amended Complaint, Plaintiffs allege that Defendants have infringed twenty-one U.S. design patents, each directed to a headlamp for a particular automobile.  *See* 1st. Am. Compl. at ¶¶ 13, 19, 25, 31, 37, 43, 49, 55, 61, 67, 73, 79, 85, 91, 97, 103, 109, 115, 121, 127, 133, 139 (Dkt. No. 36).  Each asserted patent

1  claims "[t]he ornamental design for a [headlamp / head lamp] for an automobile, as

2  shown and described." *Id.* at Exs. 1-21 (Dkt. Nos. 36-1 through 36-21). Each asserted

3  patent only shows a headlamp for one side of an automobile, *e.g.*, either the driver-

4  side or the passenger-side. *Id.* None of the asserted patents include any language

5  describing the mirror image of the depicted headlamp as a claimed embodiment. *Id.*

6  A summary of the asserted patents is set forth in the table below:

| Claim | Patent No. | Title | Model | Side |
|-------|-----------|-------|-------|------|
| 1 | D683,484 | Headlamp for an Automobile | Genesis Coupe | Passenger |
| 2 | D664,690 | Headlamp for an Automobile | Elantra GT | Passenger |
| 3 | D660,476 | Headlamp for Automobiles | Veloster | Driver |
| 4 | D660,474 | Headlamp for Automobiles | Veloster | Driver |
| 5 | D657,898 | Headlamp for an Automobile | Genesis | Passenger |
| 6 | D657,897 | Headlamp for an Automobile | Genesis | Passenger |
| 7 | D655,835 | Headlamp for Automobiles | Accent | Driver |
| 8 | D652,551 | Headlamp for Automobiles | Elantra | Passenger |
| 9 | D645,591 | Headlamp for Automobiles | Azera | Driver |
| 10 | D640,812 | Headlamp for Automobiles | Elantra | Passenger |
| 11 | D637,319 | Headlamp for Automobiles | Sonata Hybrid | Passenger |
| 12 | D631,583 | Headlamp for Automobiles | Tucson | Passenger |
| 13 | D617,478 | Headlamp for Automobiles | Sonata | Driver |
| 14 | D759,865 | Headlamp for Automobiles | Tucson | Passenger |
| 15 | D709,217 | Headlamp for Automobiles | Santa Fe | Passenger |
| 16 | D738,003 | Headlamp for Automobiles | Elantra | Passenger |
| 17 | D739,057 | Headlamp for Automobiles | Elantra | Passenger |
| 18 | D771,292 | Headlamp for Automobiles | Elantra | Passenger |
| 19 | D715,981 | Head Lamp for Automobiles | Tucson | Passenger |
| 20 | D760,413 | Head Lamp for Automobiles | Tucson | Passenger |
| 21 | D771,293 | Head Lamp for Automobiles | Elantra | Passenger |

## B. Accused Products

In their First Amended Complaint, Plaintiffs allege that "[t]he infringing products include, but are not limited to, at least the replacement headlamps advertised by Defendants for the Hyundai [Genesis Coupe / Elantra GT / Veloster / Genesis / Accent / Elantra / Azera[1] / Sonata Hybrid / Tucson / Sonata / Santa Fe] [at https://depo.com.tw[2] / at https://www.maxzone.com]. *See* 1st. Am. Compl. at ¶¶ 19, 25, 31, 37, 43, 49, 55, 61, 67, 73, 79, 85, 91, 97, 103, 109, 115, 121, 127, 133, 139 (Dkt. No. 36). The First Amended Complaint does not include photographs of each accused product and does not include comparisons of each of the figures in the asserted patents to photographs of the accused products. *See generally id.* Rather, Plaintiffs only included a comparison of one view from three asserted patents (*i.e.*, U.S. Patent Nos. D652,551, D655,835, and D631,583) compared to the driver-side replacement headlamps for three automobiles. *Id.* at ¶ 17.

Notably, Plaintiffs misleadingly manipulated some of the figures in the asserted patents in an attempt to demonstrate infringement in their complaints. For example, U.S. Patent No. D631,583 depicts a passenger-side headlamp, but Plaintiff included a mirror-image of the figure from the '583 patent in their First Amended Complaint in an attempt to show infringement by a driver-side headlamp. *Compare id.* at Ex. 12 (Dkt. No. 36-12) *with id.* at ¶ 17 (Dkt. No. 36). Similarly, while the figure of U.S. Patent No. D652,551 is not visible in the First Amended Complaint, Plaintiffs' original Complaint shows that, even though the '551 patent claims a passenger-side headlamp, Plaintiffs included a mirror-image of the figure from the '551 patent in an attempt to show infringement by a driver-side headlamp. *Compare* Compl. Ex. 8 (Dkt. No. 1-8) *with* Compl. at ¶ 17 (Dkt. No. 1); 1st Am. Comp. at ¶ 17 (Dkt. No. 36).

---

[1] Plaintiffs do not list any website where replacement headlamps for the Hyundai Azera are allegedly advertised. *See* 1st. Am. Compl. at ¶ 67.

[2] It is unclear how advertising on a Taiwanese website could possibly constitute infringement of a U.S. patent.

The actual figures from the '551 and '583 patents, and Plaintiffs' misleading manipulation of those figures, are set forth in the tables below:



| Actual Figure 1 from U.S. Patent No. D652,551 (Dkt. No. 36-8) | Figure of U.S. Patent No. D652,551 from Compl. (Dkt. No. 1 at ¶ 17) |
|---|---|

| Actual Figure 1 from U.S. Patent No. D631,583 (Dkt. No. 36-12) | Figure of U.S. Patent No. D631,583 from 1st Am. Compl. (Dkt. No. 36 at ¶ 17) |
|---|---|

Plaintiffs' misleading manipulations of these figures further show that Plaintiffs accuse both driver-side and passenger-side headlamps of infringing each asserted patent.[3]

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

---

[3]      During the meet and confer process, Plaintiffs' counsel stated that Plaintiffs will oppose this motion to dismiss, confirming that Plaintiffs allege infringement of each asserted patent by both driver-side and passenger-side headlamps.

1   *Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff

2   pleads facts that "allow[] the court to draw the reasonable inference that the defendant

3   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4       In resolving a Rule 12(b)(6) motion under *Twombly*, the Court must follow a

5   two-pronged approach.   First, the Court must accept all well-pleaded factual

6   allegations as true, but "[t]hreadbare recitals of the elements of a cause of action,

7   supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

8   Second, assuming the veracity of well-pleaded factual allegations, the Court must

9   "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

10  This determination is context-specific, requiring the Court to draw on its experience

11  and common sense, but there is no plausibility "where the well-pleaded facts do not

12  permit the court to infer more than the mere possibility of misconduct." *Id.*  For

13  purposes of ruling on a Rule 12(b)(6) motion, the court must "accept factual

14  allegations in the complaint as true and construe the pleadings in the light most

15  favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

16  F.3d 1025, 1031 (9th Cir. 2008).  However, courts "'are not bound to accept as true a

17  legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting

18  *Twombly*, 550 U.S. at 555).

19  **IV.   THE COURT SHOULD DISMISS HYUNDAI'S CLAIMS FOR**

20          **PATENT INFRINGEMENT AGAINST HEADLAMPS NOT**

21          **DEPICTED IN THE ASSERTED PATENTS**

22          **A.   The Asserted Patents Are Limited to the Headlamp on One Side**

23                **(Either the Driver-Side or Passenger-Side) of an Automobile**

24      The Federal Circuit has held that "trial courts have a duty to conduct claim

25  construction in design patent cases." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d

26  665, 679 (Fed. Cir. 2008) (en banc) (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d

27  1571, 1577 (Fed. Cir. 1995)).  A detailed verbal description is not required as a design

28  is often better represented by an illustration.  *Id.* at 679-80.  Indeed, "a design patent

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 10 of 17   Page ID
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 38 of 53   PageID 26401
#:199

'is claimed as shown in its drawing,' and '[t]here is usually no description of the design in words.'"  *Oakley, Inc. v. Trillion Top Co. Ltd. LLC*, No. SACV 17-01580 AG (JCGx), 2018 WL 5099484, at *3 (C.D. Cal. June 4, 2018) (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998)).  Claim construction is a matter of law exclusively within the province of the court.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).[4]

In general, statements which attempt to broaden the scope of a claimed design beyond that which is shown in the drawings are not permitted.  One exception is that a statement describing and claiming the mirror image of the design shown in the drawings is permitted.  Specifically, Section 1503 of the Manual of Patent Examining Procedure provides:

> (B) The following types of statements are not permissible in the specification: …
>
> (2) **Statements which describe or suggest other embodiments of the claimed design which are not illustrated in the drawing disclosure, except one that is a mirror image of that shown or has a shape and appearance that would be evident from the one shown, are not permitted in the specification of an issued design patent**.  However, such statements may be included in the design application as originally filed to provide antecedent basis for a future amendment.  In addition, statements which attempt to broaden the scope of the claimed design beyond that which is shown in the drawings are not permitted.

M.P.E.P. at § 1503 (emphasis added).

Courts have recognized that the mirror image of a depicted design is a separate

---

[4] Claim construction of a design patent may also include distinguishing between those features of the claimed design that are ornamental and those that are purely functional.  *See Egyptian Goddess, Inc.*, 543 F.3d at 680 (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).  For purposes of this motion to dismiss, there is no need for the Court to determine which features are ornamental and which features are purely functional.  Defendants reserve the right to seek such a determination at a later stage in the case.

APPX 036

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 11 of 17   Page ID
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 39 of 53   PageID 26402
#:621

embodiment that must be specifically claimed for the design patent to also cover the mirror image of the depicted design. For example, in *Dorman Products, Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663 (E.D. Penn. 2016), the owner of three design patents for headlights of a heavy-duty truck alleged that both driver-side and passenger-side replacement headlights infringed its patents. The alleged infringer argued that the patentee disavowed the right headlight during prosecution of one of the patents because the patentee had changed the figures to show the right headlight in broken lines.[5] *Id.* at 682-83. The Court rejected this argument noting that the change was made "to comply with the PTO's requirement that design patents that claim multiple embodiments identify a 'single entity of manufacture.'" *Id.* at 683 (quoting M.P.E.P. § 1504.01(b)). The Court further noted that while the patent's specification only depicts the left headlight, it also contained the explicit statement: "The design envisioned contains a second portion whose image is mirror symmetrical to the one shown." *Id.* Notably, the other two patents asserted in *Dorman* each contained fourteen figures depicting different views of both left and right headlights. *Id.* at 672.

The *Dorman* case is instructive in at least two respects. First, the *Dorman* case shows that the designs of driver-side and passenger-side headlamps are separate embodiments, and both embodiments must be explicitly claimed for the patent to cover both the driver-side and passenger-side headlamps. Second, the *Dorman* case shows that in the automotive industry, patentees often claim both driver-side and passenger-side headlamps by either (1) showing both embodiments in the figures, or (2) including an explicit statement claiming the mirror-image embodiment.

In this case, each asserted patent claims "[t]he ornamental design for a [headlamp / head lamp] for an automobile, ***as shown and described***." *See supra* at § II.A (emphasis added). Each asserted patent only ***shows*** a headlamp for one side of

---

[5]     "Broken lines may be used to show [unclaimed] visible environmental structure …." 37 C.F.R. § 1.152.

1  an automobile, *e.g.*, either the driver-side or the passenger-side. *Id.* None of the

2  asserted patents include any language ***describing*** the mirror image of the depicted

3  headlamp as a claimed embodiment. *Id.* As in *Dorman*, Hyundai could have included

4  language or additional figures claiming the mirror image of the design depicted in the

5  asserted patents. Hyundai failed to do so. Thus, as a matter of law, the asserted

6  patents are limited to the design of a headlamp on one side of an automobile—either

7  the driver-side or the passenger-side. *See id.* (table listing which side each asserted

8  patent claims).

**B.  No Reasonable Factfinder Would Find That a Headlamp on One Side of an Automobile Is Substantially Similar to the Headlamp on the Opposite Side of the Automobile**

12  A design patent is infringed whenever the patented design or "any colorable

13  limitation thereof," is applied "to any article of manufacture for the purpose of sale."

14  35 U.S.C. § 289. To determine whether an accused product infringes a patented

15  design, the sole test that courts apply is the "ordinary observer" test. *Egyptian*

16  *Goddess*, 543 F.3d at 678. The "ordinary observer" test states:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

21  *Id.* at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1872)).

22  "The Federal Circuit has held that determining infringement of a design patent

23  is a question of fact." *Enerlites, Inc. v. Century Prods. Inc.*, No. SACV 18-839

24  JVS(KESx), 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018) (J. Selna) (citing

25  *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed. Cir. 2002)).

26  "Therefore, it is generally inappropriate to make this determination on a motion to

27  dismiss, unless the claimed design and accused product are so plainly dissimilar that

28  it is implausible that an ordinary observer would confuse them." *Id.* (citing cases).

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 13 of 17   Page ID
#:641
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 41 of 53   PageID 26404

1    Nonetheless, numerous courts have granted motions to dismiss claims of design

2    patent infringement where the claimed design and accused product are so plainly

3    dissimilar that it is clear that the ordinary observer test cannot be met.  *See, e.g.*,

4    *Anderson v. Kimberly-Clark Corp.*, 570 Fed. Appx. 927, 931-34 (Fed. Cir. 2014)

5    (affirming district court's grant of a motion for judgment on the pleadings because

6    the district court "properly concluded that 'plain differences' exist between the

7    accused products and the patented design"); *Colida v. Nokia, Inc.*, 347 Fed. Appx.

8    569, 570 (Fed. Cir. 2009) (affirming district court's grant of a motion to dismiss

9    because "the dissimilarities far exceed the similarities when comparing each of

10   plaintiff's four Patents, as construed, to defendant's 6061 telephone, and no extrinsic

11   evidence can change that"); *SCD Characters LLC v. Telebrands Corp.*, No. CV 15-

12   00374 DDP (AGRx), 2015 WL 4624200, at *5-6 (C.D. Cal. Aug. 3, 2015) (granting

13   motion to dismiss because "[g]iven these differences, it is clear that an ordinary

14   observer would not consider the designs substantially the same"); *Nuvasive, Inc. v.*

15   *Alphatec Holdings, Inc.*, No. 18-CV-347-CAB-MDD, 2018 WL 2734881, at *3-5

16   (S.D. Cal. May 14, 2018) (granting motion to dismiss because "[t]he illustrations and

17   photographs in the complaint and attachments thereto demonstrate that no ordinary

18   observer would be deceived into thinking that the accused device is the same as the

19   patented design"); *Performance Designed Products LLC v. Mad Catz, Inc.*, No.

20   16cv629-GPC(RBB), 2016 WL 3552063, *5-7 (S.D. Cal. June 29, 2016) (granting

21   motion to dismiss because "the Court concludes that the Accused Controller and

22   'D078 Design Patent are plainly dissimilar) (citing cases); *MSA Prods., Inc. v. Nifty*

23   *Home Prods., Inc.*, 883 F. Supp. 2d 535, 540 (D. N.J. 2012) ("Although generally

24   correct that infringement is usually a question of fact, MSA is wrong that the Court

25   cannot determine infringement as a matter of law at the motion to dismiss stage.

26   While not necessarily common, many courts have dismissed claims of design

27   infringement on Rule 12(b)(6) motions where, as a matter of law, the court finds that

28   no reasonable fact-finder could find infringement.") (citing cases).

---

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 14 of 17   Page ID
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 42 of 53   PageID 26405
#:75

1    In this case, Plaintiffs accuse both driver-side and passenger-side headlamps of

2    infringing each asserted patent.  *See supra* at § II.B.  But there is no question that an

3    ordinary observer would not be deceived into thinking that a driver-side headlamp has

4    the same or substantially the same appearance as a design patent claiming a passenger-

5    side headlamp (and vice versa).

6    Plaintiffs' Complaint and First Amended Complaint only contain comparisons

7    of figures from three of the asserted patents with photographs of accused products.

8    *Id.*  In their complaints, Plaintiffs misleadingly manipulated the figures from two of

9    the three patents by using a mirror-image of the figures rather than the figures as

10   depicted in the patents.  *Id.*  The fact that Plaintiffs felt the need to manipulate the

11   figures (without informing the Court) demonstrates that even Plaintiffs agree that an

12   ordinary observer would not be deceived into thinking that a driver-side headlamp

13   infringes a design patent claiming a passenger-side headlamp (and vice versa).

14   Moreover, a simple comparison of the claimed designs with the accused

15   products demonstrates that no reasonable factfinder could find that the ordinary

16   observer test is met.  To show that an ordinary observer would never confuse a driver-

17   side headlamp with a claimed design depicting a passenger-side headlamp (and vice

18   versa), below are comparisons based on the three examples set forth in Plaintiffs' First

19   Amended Complaint, including: (1) a comparison of Figure 1 from the '551 patent

20   (depicting a passenger-side headlamp) with Defendants' driver-side headlamp for a

21   Hyundai Elantra; (2) a comparison of Figure 1 from the '835 patent (depicting a

22   driver-side headlamp) with Defendants' headlamp for a Hyundai Accent (mirror-

23   imaged to represent a passenger-side headlamp); and (3) a comparison of Figure 1

24   from the '583 patent (depicting a passenger-side headlamp) with Defendants' driver-

25   side headlamp for a Hyundai Tucson,

26

27

28

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 15 of 17   Page ID
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 43 of 53   PageID 26406
#:690

| U.S. Patent No. D652,551 (Dkt. No. 36-8 at Fig. 1) | Defendants' Accused Design (Dkt. No. 36 at ¶ 17) |
|---|---|
| |  |

| U.S. Patent No. D652,551 (Dkt. No. 36-8 at Fig. 1) | Defendants' Accused Design (Dkt. No. 36 at ¶ 17) |
|---|---|

| U.S. Patent No. D655,835 (Dkt. No. 36-7 at Fig. 1) | Defendants' Accused Design (Mirror Image of Dkt. No. 36 at ¶ 17) |
|---|---|
|  |  |

| U.S. Patent No. D631,583 (Dkt. No. 36-12 at Fig. 1) | Defendants' Accused Design (Dkt. No. 36 at ¶ 17) |
|---|---|
|  |  |

The differences between the claimed designs and headlamps for the opposite side of the headlamp depicted in each asserted patent is further demonstrated by comparing other figures in the asserted patents to the accused products.  For example, U.S. Patent No. D652,551 depicts a passenger-side headlamp.  *See* Dkt. No. 36-8.

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 16 of 17   Page ID
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 44 of 53   PageID 26407
#:671

Figure 4 of the '551 patent depicts the "left side view" and shows the outer portion of the headlamp, which would be visible when installed in an automobile. *Id.* In contrast, Figure 5 of the '551 patent depicts the "right side view" and shows the inside, connecting portion of the headlamp, which would not be visible when installed in an automobile. *Id.* These left- and right-side views are set forth in the table below:

| U.S. Patent No. D652,551 (Dkt. No. 36-8 at Fig. 4 (left side)) | U.S. Patent No. D652,551 (Dkt. No. 36-8 at Fig. 5 (right side)) |
|---|---|



But for a driver-side headlamp, the left-side view would show the connecting portion of the headlamp and would look very different than Figure 4 of the '551 patent. Similarly, the right-side view of a driver-side headlamp would show the outer portion of the headlamp and would look very different than Figure 5 of the '551 patent. Comparing these left- and right-side views conclusively demonstrates that an ordinary observer would not be deceived into purchasing a driver-side headlamp supposing it be a passenger-side headlamp (and vice versa).

In sum, Plaintiffs' claims for design patent infringement against headlamps not depicted or claimed in the asserted patents are facially implausible because the appearance of a driver-side headlamp is plainly dissimilar than the appearance of a passenger-side headlamp (and vice versa) such that no reasonable factfinder could find that the ordinary observer test is met.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' claims for patent infringement against headlamps not depicted or claimed in the asserted patents.

Case 8:18-cv-02151-JVS-KES   Document 38-1   Filed 08/12/19   Page 17 of 17   Page ID
Case 3:17-cv-03201-N   Document 435   Filed 10/09/20   Page 45 of 53   PageID 26408
#:684

1    DATED:  August 12, 2019            Respectfully submitted,

2                                       LTL ATTORNEYS LLP

3

4                                       By  /s/ *Michael J. Song*

5                                          Michael J. Song

6                                          *Attorneys for Defendants*
7                                          *Depo Auto Parts Industrial Co., Ltd. and*
                                           *Maxzone Vehicle Lighting Corp.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

US00D878261S



(12) **United States Design Patent**
Woodhouse et al.

(10) Patent No.: **US D878,261 S**
(45) Date of Patent: ✶✶ **Mar. 17, 2020**

(54) **VEHICLE FENDER**

(71) Applicant: **Ford Global Technologies, LLC**, Dearborn, MI (US)

(72) Inventors: **David Woodhouse**, Troy, MI (US); **Kemal Curic**, Irvine, CA (US); **Xitij Mistry**, Ann Arbor, MI (US); **Gurminder Bhandal**, Ferndale, MI (US); **John C. Caswell**, Grosse Pointe, MI (US)

(73) Assignee: **Ford Global Technologies, LLC**, Dearborn, MI (US)

(✶✶) Term: **15 Years**

(21) Appl. No.: **29/641,681**

(22) Filed: **Apr. 24, 2018**

(51) **LOC (12) Cl.** .............................................. **12-16**

(52) **U.S. Cl.**
USPC ...................................................... **D12/184**

(58) **Field of Classification Search**
USPC .................. D12/181, 184, 186, 196; D15/28
CPC ................................ B62D 25/16; B62D 25/18
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 9,278,716 | B1 * | 3/2016 | Joseph | B62D 25/18 |
| D756,870 | S * | 5/2016 | Tsutamori | D12/184 |
| D758,935 | S * | 6/2016 | Platto | D12/184 |
| 9,403,557 | B1 * | 8/2016 | Sharma | C21D 1/06 |
| 9,487,238 | B2 * | 11/2016 | Iwano | B62D 25/025 |
| D775,031 | S * | 12/2016 | Frascella | D12/184 |
| D787,395 | S * | 5/2017 | Curic | D12/181 |
| 9,669,876 | B2 * | 6/2017 | Iwano | B62D 25/04 |
| 9,738,322 | B2 * | 8/2017 | Matthiessen | B62D 25/02 |
| D803,119 | S * | 11/2017 | Beermann | D12/184 |
| D803,741 | S * | 11/2017 | Tsubaki | D12/184 |
| D805,013 | S * | 12/2017 | Whitla | D12/181 |
| D806,622 | S * | 1/2018 | Granlund | D12/184 |
| D807,261 | S * | 1/2018 | Zavatski | D12/184 |
| 9,890,966 | B2 * | 2/2018 | Mueller | B62D 25/16 |
| D817,829 | S * | 5/2018 | Behmer | D12/184 |
| D820,751 | S * | 6/2018 | Luk | D12/184 |
| D823,741 | S * | 7/2018 | Kim | D12/169 |
| 10,023,241 | B2 * | 7/2018 | Umemoto | B62D 25/161 |
| 10,035,543 | B2 * | 7/2018 | Sato | B60J 5/0444 |
| D826,811 | S * | 8/2018 | Lim | D12/184 |
| D827,527 | S * | 9/2018 | Loeb | D12/184 |
| D827,528 | S * | 9/2018 | Gueler | D12/184 |
| D827,529 | S * | 9/2018 | Al Attar | D12/184 |
| D828,254 | S * | 9/2018 | Simm | D12/184 |
| 10,077,085 | B2 * | 9/2018 | Pfaffelhuber | B62D 27/02 |

* cited by examiner

*Primary Examiner* — Susan Bennett Hattan
*Assistant Examiner* — Suzanne E Tisdell

(57) **CLAIM**

The ornamental design for a vehicle fender, as shown and described.

**DESCRIPTION**

FIG. **1** is a front elevational view of a left vehicle fender, showing our new design;

FIG. **2** is a left side elevational view thereof;

FIG. **3** is a right side elevational view thereof;

FIG. **4** is a top plan view thereof;

FIG. **5** is a bottom plan view thereof;

FIG. **6** is a top, left and front side perspective view thereof; and,

FIG. **7** is a top, right and front side perspective view thereof.

**1 Claim, 7 Drawing Sheets**



Appx 044



*Fig. 1*



*Fig. 2*



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



*Fig. 7*